# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-05043-01/03-CR-SW-MDH |
| | ) | |
| KENNETH SCOTT MCKEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

The Court referred this matter to the undersigned for preliminary review pursuant to 28 U.S.C. § 636(b) and Rule 72.1 of the Local Rules of Procedure of the United States District Court for the Western District of Missouri. This matter is currently before the Court on Defendants Kenneth Scott McKee, Charles V. Baltzell, and Curtis P. Lanham's ("Defendants") seven jointly filed motions to dismiss (Docs. 53 through 59) and Defendant McKee's Motion to Suppress Statement (Doc. 52). For the reasons set forth below, it is hereby **RECOMMENDED** that Defendants' Joint Motion to Dismiss the Second Superseding Indictment for Lack of Admiralty Jurisdiction (Doc. 54) be **GRANTED**, and that the remaining pending motions be **DENIED** as moot.

## I.    Preliminary Statement & Background

Defendants are charged in a 47-count Second Superseding Indictment alleging violations of 18 U.S.C. § 1115 (commonly called the Seaman's Manslaughter statute) and 46 U.S.C. § 2302(b) (a misdemeanor charge for gross negligent operation of a vessel). Defendants Baltzell and

1

Lanham's charges under the Seaman's Manslaughter statute and misdemeanor negligent operation of a vessel are premised on 18 U.S.C. § 2 (aiding and abetting). (Doc. 42).[1]

On July 19, 2018, 17 people died on Table Rock Lake when the vessel Stretch Duck 7 sank during a storm. On the day in question, Defendant McKee captained Stretch Duck 7, Defendant Baltzell was the operations supervisor and manager on duty, and Defendant Lanham was the general manager of Ride the Ducks Branson. (Doc. 42, ¶¶ 7-9). Table Rock Lake's shores extend into both Missouri and Arkansas. The indictment alleges the incidents took place in the Western District of Missouri and within the admiralty jurisdiction of the United States. (Doc. 42, ¶¶ 47, 51, 56).

The undersigned heard oral argument on Defendants' Motion to Dismiss the Second Superseding Indictment for Lack of Admiralty Jurisdiction (Doc. 54). *See* Transcript of July 17, 2020 Hearing (Doc. 90). The parties requested that they be able to present evidence, which they submitted in writing at the hearing pursuant to stipulation (Doc. 86); the parties called no live witnesses. The undersigned has reviewed the evidence the parties submitted. (Government's exhibits 1 through 35; Defendants' exhibits A through M).

## II.      Parties' Arguments

Defendants have asked the Court to dismiss the Second Superseding Indictment arguing the Court lacks subject matter jurisdiction. (Doc 54). Specifically, Defendants contend that the Second Superseding Indictment alleges only admiralty jurisdiction, and that the Court's admiralty jurisdiction does not extend to crimes occurring on Table Rock Lake because the lake is not

---

[1] There were also related civil suits arising out of the same boat accident pending before this Court, consolidated under Case No. 6:18-cv-03339-MDH, styled *In the Matter of the Complaint of Branson Duck Vehicles, LLC as Owner and; Ripley Entertainment, Inc., as Owner pro hac vice of the Stretch Duck 07 for Exoneration from or Limitation of Liability* (the "civil suit").

"navigable" as a matter of law under binding Eighth Circuit precedent. Furthermore, Defendants argue that this Court's subject matter jurisdiction is an element of the crimes charged, and therefore the Government's attempt to change the jurisdictional basis from what is charged in the indictment amounts to a constructive amendment in violation of the Defendants' Fifth and Sixth Amendment rights. *See Sullivan v. Louisiana,* 508 U.S. 275, 277–278 (1993) (the Fifth and Sixth Amendments require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged). The Second Superseding Indictment alleges that each of the charges occurred "on Table Rock Lake, a navigable water of the United States within the Western District of Missouri and within the admiralty jurisdiction of the United States." (Doc. 42).

Conversely, the Government contends the Motion is procedurally premature and is an improper attempt at a criminal motion for summary judgment. The Government argues it alleges admiralty jurisdiction only over the negligent operation of a vessel charges, 46 U.S.C. § 2302. As to the Seaman's Manslaughter charges, the Government argues the Court has subject matter jurisdiction under one or more of three separate legal theories: 1) 18 U.S.C. § 3231 (authorizing the Court to preside over any charged offense against the laws of the United States); 2) U.S. Const. art. III, § 2 (extending the judicial power to all cases of admiralty and maritime jurisdiction); and 3) U.S. Const. art. I, § 8 (granting Congress the power to regulate commerce with foreign nations and among the states). The Government points out that 18 U.S.C. § 1115 contains no federal nexus or jurisdictional element within the plain statutory language. Therefore, the Government argues that the grand jury indicted on all relevant facts and the indictment is sufficient to provide notice of the charges, and should not be dismissed pretrial. Furthermore, the Government argues that lack

of a jurisdictional element in the criminal statute permits it to allege multiple theories and proceed under any of its three theories at trial.

### III.     Standard for Dismissal

Motions to dismiss are governed by Rule 12 of the Federal Rules of Criminal Procedure. Here, Defendants move pursuant to Rule 12(b)(2) which states "[a] motion that the court lacks jurisdiction may be made at any time while the case is pending." The Court also considers Rule 12(b)(1), which states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."

"The objection that a federal court lacks subject-matter jurisdiction [ ] may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, (2006) (citation omitted). Subject-matter jurisdiction refers to a court's "power to hear a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002). "It is most true that this Court will not take jurisdiction if it should not," Chief Justice Marshall famously wrote, "but it is equally true, that it must take jurisdiction if it should .... We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia,* 6 Wheat. 264, 404, 5 L.Ed. 257 (1821).

### IV.     Discussion

The undersigned concludes the charges against Defendants should be dismissed. Although this Court does have subject matter jurisdiction over the charges under 18 U.S.C. § 3231 which covers all federal crimes, the prescriptive reach of 18 U.S.C. § 1115 and 46 U.S.C. § 2302(b) is defined by admiralty law.  And, said prescriptive reach does not cover the conduct alleged, in that Table Rock Lake is not navigable as a matter of admiralty law. Therefore, the charges against Defendants should be dismissed. Finally, the Commerce Clause does not apply to the charges in

4

this case because the Commerce Clause grants regulatory power to Congress, and does not implicate the subject matter jurisdiction of the Court. For the statutes charged, the appropriate test for these federal crimes is one founded in admiralty (navigability in fact) rather than the scope for Congressional regulation under the Commerce Clause (historical navigability).

**A. The Court Has Subject Matter Jurisdiction Under 18 U.S.C. § 3231**

This Court has general criminal subject matter jurisdiction over the Seaman's Manslaughter charge under 18 U.S.C. § 3231 and the negligent operation charge under 46 U.S.C. § 2302 because they are offenses against the laws of the United States.

Whether the federal courts have subject matter jurisdiction over a federal prosecution of a criminal offense is simply and conclusively answered by 18 U.S.C. § 3231. It states in clear, unambiguous words, "The district courts of the United States have original jurisdiction … of all offenses against the laws of the United States." 18 U.S.C. § 3231; *see United States v. Ryan*, 41 F.3d 361, 363-64, 368 (8th Cir. 1994) (en banc), *vacated on other grounds* ("The district court had subject-matter jurisdiction in this case by virtue of the fact that [the defendant] was charged with an 'offense against the United States.'"). It is undisputed that 18 U.S.C. §§ 1115 and 2, and 46 U.S.C. § 2302 are laws of the United States. Other courts who have examined this issue have addressed subject matter jurisdiction in a similarly cursory fashion.

If the indictment alleges an offense under U.S. criminal statutes, the federal courts have the power to adjudicate the claim. *See United States v. Prado*, 933 F.3d 121, 134 (2d Cir. 2019); *United States v. Yousef*, 750 F.3d 254, 259 (2d Cir. 2014) ("Federal courts have subject-matter jurisdiction over federal criminal prosecutions by virtue of 18 U.S.C. § 3231, which vests the district courts with the power to hear 'all offenses against the laws of the United States.'").

Other courts that have examined charges filed under 18 U.S.C. § 1115 and 46 U.S.C. § 2302 have also found that the courts had subject matter jurisdiction under § 3231, even if they later addressed the scope of the statute under admiralty principles. *See United States v. Kaluza*, 780 F.3d 647, 654 (5th Cir. 2015) ("In the criminal context, subject matter jurisdiction is straightforward. Here, the district court had subject matter jurisdiction under 18 U.S.C. § 3231, which provides that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."); *United States v. Allied Towing Corp.*, 602 F.2d 612 (4th Cir. 1979) ("Unless [§] 7 modifies [§] 1115, Allied's conviction must stand because 18 U.S.C. [§] 3231 gives federal district courts jurisdiction over all offenses against the laws of the United States."

### B. Failure to Explicitly Invoke Jurisdiction Under 18 U.S.C. § 3231 is Not Fatal Where the Indictment Tracks the Statutory Language of the Federal Crime

Defendants argue that the Government cannot invoke subject matter jurisdiction under 18 U.S.C. § 3231 because the Second Superseding Indictment alleges only admiralty jurisdiction. The failure to explicitly reference 18 U.S.C. § 3231 in the indictment is not a constructive amendment, and does not affect this Court's subject matter jurisdiction.

The general rule is that any effort by the government to modify the charging document is violative of a defendant's right to due process and fair trial when that modification constitutes a constructive amendment or fatal variance from the indictment. *See United States v. Yeo*, 739 F.2d 385 (8th Cir. 1984); *Stirone v. United States*, 361 U.S. 212 (1960). A constructive amendment arises when the "essential elements of the offense" described in the charging instrument "are altered, either actually or in effect, by the prosecutor or the court" so that a "substantial likelihood" exists that the defendant was convicted of an uncharged offense. *United States v. McDill*, 871 F.3d 628, 631 (8th Cir. 2017) (quoting *United States v. Novak*, 217 F.3d 566, 574-75. (8th Cir. 2000).

6

"The basic difference between a constructive amendment and a variance is this: a constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same." *Id*. at n. 1.

Defendants cite to *Yeo* and *Stirone* and argue that the omission of an explicit reference to § 3231 is fatal. These cases are distinguishable. In *Yeo*, the modification was introducing additional facts at trial combined with jury instructions permitting for a guilty finding based on those facts that were not included in the indictment. 739 F.2d at 387. In finding that a constructive amendment had occurred, the court wrote, "Quite simply, in this case we cannot be certain that the jury convicted Yeo for the same charge on which he was indicted by the grand jury." *Id*.

In *Stirone*, the government presented proof at trial of an essential underlying fact (potential for future shipment of steel in interstate commerce) that was not alleged in, and was different than, the charge in the indictment (shipment of sand in interstate commerce). 361 U.S. at 213-14. The variances in *Yeo* and *Stirone* implicated those defendants' Fifth Amendment right to indictment by a grand jury on all charges and Sixth Amendment right to notice of the charges against them. *See id*.; *see also United States v. McDill*, 871 F.3d 628 (8th Cir. 2015) citing *United States v. Stuckey*, 220 F.3d 976, 981 & n.5 (8th Cir. 2000). There are no such amendments to the charges here.

In this case, Defendants are clear on what the charges are against them, and the factual basis of those charges. Rather, they are protesting that the underlying jurisdictional bases—not the charges—have changed. In other words, Defendants argue that the Indictment says admiralty jurisdiction, so the Government's attempt to pursue jurisdiction under § 3231 is a constructive amendment because it changes the charges against them. In support of their position, Defendants argue that "[t]he particular predicate for jurisdiction is an essential element of any offense," citing

7

*United States v. Young*, 730 F.2d 221, 224 (5th Cir. 1984).[2] This is an overstatement of the law. Where a statute includes a jurisdictional element, it is true that it is an essential element. However, 18 U.S.C. § 1115 does not contain a legislative jurisdiction element. In all of the available jury instructions for charges under 18 U.S.C. § 1115 that the undersigned reviewed from historical cases, none included a jurisdictional element.

"An indictment is sufficient if it contains the elements of the offense charged, [and] lets the defendant know what he needs to do to defend himself …." *United States v. Whitlow*, 815 F.3d 430, 433 (8th Cir. 2016) (citation omitted). Failure to include a reference to § 3231 in a criminal indictment is not a violation of a defendant's Fifth Amendment due process right to indictment by a grand jury, or Sixth Amendment right to notice of the charges against him or her. In this case, the Indictment tracks the language of the statutes for purposes of establishing subject matter jurisdiction under § 3231.[3]

However, assumption of subject matter jurisdiction under § 3231 does not mean the case goes straight to the jury. In this case, the prescriptive reach of the statute is still defined by admiralty. *See United States v. Allied Towing Corp.*, 602 F.2d 612 (4th Cir. 1979). The Seaman's Manslaughter statute does not reach the conduct in question, and dismissal is required.

---

[2] Defendants also cite *United States v. Sebetich*, 776 F.2d 412, 426 (3rd Cir. 1985) (characterizing "federal jurisdiction" as "an essential element of the charge"); *United States v. Jackson*, 697 F.3d 670, 671 (8th Cir. 2012) (holding that the predicate for subject matter jurisdiction, Indian status, is "an element of the offense" the government must prove); *United States v. McRary*, 665 F.2d 674, 679 (5th Cir. 1982).

[3] The Court makes no rulings here regarding the merit of Defendants' other motions regarding superfluous language in the Indictment.

### C. Table Rock Lake Is Not Navigable Under Admiralty Law

Article III, section 2 of the U.S. Constitution extends federal "judicial Power … to all Cases of admiralty and maritime Jurisdiction…." U.S. Const., Art. III. § 2. The extent of a court's admiralty subject matter jurisdiction depends on whether the waterway in question is navigable in fact. *The Daniel Ball*, 77 U.S. 557, 19 L. Ed. 999 (1870).

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

*The Daniel Ball*, 77 U.S. 557, 563, 19 L. Ed. 999 (1870).

*The Daniel Ball* is important because it established that the outer boundaries of the federal judiciary's admiralty subject matter jurisdiction extends to waters that are navigable in fact. A water's navigability—and thus admiralty jurisdiction—no matter the type of case, has always been founded in part on an inquiry based on a geographical limitation. Most maritime statutes or cases, however, do not reach the full extent of the courts' admiralty jurisdiction. For example, a contract falls within the admiralty jurisdiction if the contract itself is "maritime in nature."[4] A tort must have a "maritime situs."[5] Critically, there are many different variations on the geographical limitation (i.e. reach) when it comes to admiralty crimes, including the crimes alleged here against Defendants.

---

[4] *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 24 (2004) (The key inquiry when deciding whether a contract is maritime in nature is whether the contract has reference to maritime service or maritime transactions).
[5] *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995).

There are two major types of federal maritime crimes: common-law crimes, such as murder and assault, which are punishable under federal law[6] when committed "within the special maritime and territorial jurisdiction of the United States," and crimes inherently related to ships, such as mutiny[7] and stowing away.[8] With respect to many crimes in the latter category, federal jurisdiction extends to "the high seas and any other waters within the admiralty and maritime jurisdiction of the United States."[9] However, there are departures from these prevailing formulations, including "on the high seas";[10] "upon the sea, or upon any reef, shoal, bank, or rocks of the sea, or in any other place within the admiralty and maritime jurisdiction of the United States";[11] "abroad";[12] "on the high seas, or within the United States";[13] and "within the territorial waters of the United States."[14] Moreover, there are some maritime criminal statutes,[15] one of which has been construed as jurisdictionally coextensive with the general admiralty jurisdiction of the federal courts, which contain no jurisdictional provisions whatsoever.[16]

§ 53:288. Jurisdiction, 23 Fed. Proc., L. Ed. § 53:288.

Defendants here are charged with two maritime crimes: 18 U.S.C. § 1115, commonly called the Seaman's Manslaughter statute, and 46 U.S.C. § 2302, a misdemeanor charge for negligent operation of a vessel.[17] The Seaman's Manslaughter statute is the last crime referenced in the treatise above; namely, it has no explicit (nor implicit) language defining its geographic applicability. *See* 18 U.S.C. § 1115.

---

[6] 18 U.S.C. § 81 (arson); 18 U.S.C.A. § 113 (assault); 18 U.S.C. § 114 (maiming); 18 U.S.C. § 661 (theft); 18 U.S.C. § 662 (receiving stolen property); 18 U.S.C. § 1111 (murder); 18 U.S.C. § 1112 (manslaughter); 18 U.S.C. § 1113 (attempted murder or manslaughter); 18 U.S.C. § 1201(a)(2) (kidnapping); 18 U.S.C. § 1363 (malicious mischief).
[7] 18 U.S.C. § 2193.
[8] 18 U.S.C. § 2199.
[9] 18 U.S.C. § 1659 (attack to plunder vessel; "the high seas or other waters within the admiralty and maritime jurisdiction of the United States"); 18 U.S.C. § 2191 (cruelty to seamen); 18 U.S.C. § 2192 (incitation to revolt or mutiny); 18 U.S.C. § 2193 (revolt or mutiny of seamen); 18 U.S.C. § 2272 (destruction of vessel by owner); 18 U.S.C. § 2273 (destruction of vessel by nonowner); 18 U.S.C. § 2276 (breaking and entering vessel).
[10] 18 U.S.C. § 1651 (piracy).
[11] 18 U.S.C. § 1658 (plunder of distressed vessel).
[12] 18 U.S.C. § 2195 (abandonment of sailors).
[13] 18 U.S.C. § 2271 (conspiracy to destroy vessels).
[14] 18 U.S.C. § 2274 (destruction or misuse of vessel by person in charge).
[15] 18 U.S.C. § 507 (counterfeiting and forgery in connection with ship's papers); 18 U.S.C. § 1115 (misconduct or neglect on the part of a ship's officers resulting in the death of another person).
[16] *U.S. v. Allied Towing Corp.*, 602 F.2d 612 (4th Cir. 1979) (construing 18 U.S.C. § 1115)
[17] Defendants Baltzell and Lanham's charges under these two alleged crimes are premised on 18 U.S.C. § 2 (aiding and abetting).

10

### 1. Subject matter jurisdiction versus legislative or prescriptive jurisdiction elements

A court's subject matter jurisdiction is different from the legislative or prescriptive jurisdiction (reach) of a statute. The Supreme Court has recognized that the word "jurisdiction" has been used by courts to convey "many, too many, meanings." *Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 90 (1998). Subject matter jurisdiction involves "the courts' statutory or constitutional *power* to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (quoting *Steel Co.*, 523 U.S. at 89).

Legislative or prescriptive jurisdiction, on the other hand, is different from the court's power to hear a case. *See e.g., United States v. Harrold*, 2020 WL 1172207 (E.D. Mo. Feb. 4, 2020) (recognizing the difference between judicial jurisdiction and legislative or prescriptive jurisdiction). Legislative or prescriptive jurisdiction is usually defined by an element of a crime.

Most federal crimes have two different kinds of elements: substantive and jurisdictional. Whereas the substantive elements define the prohibited behavior (the harm or evil the law seeks to prevent), the jurisdictional element ties the substantive offense to one of Congress's constitutional powers spelling out the ability for Congress to legislate. *Torres v. Lynch*, 136 S. Ct. 1619, 1625-26 (2016); *see also United States v. Springer*, 866 F.3d 949, 954 (2017). This second type of element, the jurisdictional element (more accurately referred to as legislative jurisdiction, but also sometimes referred to as a jurisdictional "hook") exists because Congress does not have a general police power. *See id*. In our federal system, "'Congress cannot punish felonies generally,' *Cohens v. Virginia*, 6 Wheat. 264, 428, 5 L.Ed. 257 (1821); it may enact only those criminal laws that are connected to one of its constitutionally enumerated powers, such as the authority to regulate interstate commerce." *Torres*, 136 S. Ct. at 1624 (2016).

11

**2. 18 U.S.C. § 1115 (Seaman's Manslaughter) has no legislative jurisdiction element; its prescriptive reach is co-extensive with the Court's general admiralty subject matter jurisdiction**

The Seaman's Manslaughter statute, codified at 18 U.S.C. § 1115, has no legislative jurisdiction element contained within the language of the statute. However, the lack of a legislative jurisdiction element does not mean it has unlimited reach. The statute reads:

> Every captain, engineer, pilot, or other person employed on any steamboat or vessel, by whose misconduct, negligence, or inattention to his duties on such vessel the life of any person is destroyed, and every owner, charterer, inspector, or other public officer, through whose fraud, neglect, connivance, misconduct, or violation of law the life of any person is destroyed, shall be fined under this title or imprisoned not more than ten years, or both.

> When the owner or charterer of any steamboat or vessel is a corporation, any executive officer of such corporation, for the time being actually charged with the control and management of the operation, equipment, or navigation of such steamboat or vessel, who has knowingly and willfully caused or allowed such fraud, neglect, connivance, misconduct, or violation of law, by which the life of any person is destroyed, shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 1115

Unlike most maritime crimes, the Seaman's Manslaughter statute contains no reference to high seas, territorial waters, or admiralty jurisdiction. In fact, the statute doesn't even mention water. However, the statute's history demonstrates that Congress enacted the Seaman's Manslaughter statute pursuant to its ability to create and modify admiralty laws. *See United States v. Allied Towing*, 602 F.2d 612 (1979) (describing the historical revisions to the Seaman's Manslaughter statute from the time of its enactment in 1871 through 1948 when the statute was moved to its current location in the homicide chapter).

Although the reach of 18 U.S.C. § 1115 is a matter of first impression in the Eighth Circuit, two appellate courts have directly addressed the reach of the statute. In *Hoopengarner v. United*

12

*States*, 270 F.2d 465 (6th Cir. 1959), the defendant was convicted under 18 U.S.C. § 1115 for the

death of a woman who fell from a yacht on connecting waters in the Great Lakes. The court found

that the incident occurred within the special maritime jurisdiction as defined by 18 U.S.C. § 7, and

affirmed the conviction. The special maritime and territorial jurisdiction does not include

navigable waters within the federal admiralty jurisdiction that are also within the territorial

jurisdiction of a particular state.[18]  Because the court in *Hoopengarner* found that the incident

occurred within the special maritime jurisdiction, it did not reach the issue of whether § 1115 could

be invoked where the incident occurred outside the special maritime jurisdiction, but still within

the broader general admiralty jurisdiction.  *Id.*

The applicability of § 1115 in the space between special maritime and general maritime

jurisdiction was not addressed until 1979. *See Allied Towing*, 602 F.2d at 615. In *Allied Towing*, a

company was convicted for the homicide of two employees who died in an explosion while they

were welding the hull of a tank barge on the Elizabeth River in Norfolk, Virginia. *Id*. at 613. After

first finding that the court had subject matter jurisdiction to hear the case under 18 U.S.C. § 3231,

the court examined the statute's history to determine its reach, and held that "[t]he history of §

1115 discloses … that Congress enacted this statute as an integral part of its regulation of the

nation's maritime commerce…and reaches homicides committed anywhere within the general

---

[18] Section 7, Title 18 U.S.C., provides in part:
The term "special maritime and territorial jurisdiction of the United States", as used in this title, includes:
    (1)  The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.
    (2)  Any vessel registered, licensed, or enrolled under the laws of the United States, and being on a voyage upon the waters of any of the Great Lakes, or any of the waters connecting them, or upon the Saint Lawrence River where the same constitutes the International Boundary Line.

13

admiralty jurisdiction of the federal courts." *Id*. at 615. The undersigned finds that the opinion in *Allied Towing* is well-reasoned.

The question then becomes, what is the general admiralty jurisdiction, and does Table Rock Lake fall within those boundaries?

### 3. The Eighth Circuit Uses the Contemporary Navigability In Fact Test for Admiralty Jurisdiction

Article III, § 2, of the United States Constitution confers general admiralty subject matter jurisdiction over all admiralty and maritime cases to the federal courts involving waters that are navigable in fact. *Kaiser Aetna v. United States*, 444 U.S. 164, 171-72 & n. 7 (1979) (citing *The Propeller Genesee Chief v. Fitzhugh*, 12 How. 443, 13 L.Ed. 1058 (1852). The Eighth Circuit, utilizing the standard set out in *Kaiser Aetna*, described the federal admiralty subject matter jurisdiction test as one of contemporary navigability in fact. *Livingston v. United States*, 627 F.2d 165, 169-70 (8th Cir. 1980). The contemporary navigability in fact test comes directly from language in the Supreme Court's 1870 case, *The Daniel Ball*, cited *supra*. In *Livingston*, the appellant's decedent drowned in north central Arkansas while fishing downstream from the Norfork hydroelectric dam. 627 F.2d at 166. The administratrix of the estate brought a wrongful death action against the United States invoking the court's federal admiralty jurisdiction over torts under 28 U.S.C. § 1331(1), and a Federal Tort Claims Act action. *Id*. The Eighth Circuit held that "the concept of 'navigability' in admiralty is properly limited to describing a present capability of waters to sustain commercial shipping." *Id*. at 169-70. The court stated "absent some present or potential commercial activity, there is no ascertainable federal interest that justifies frustrating the legitimate interests of the states in providing a forum and applying their law to regulate conduct within their borders." *Id*. (citing *Adams v. Montana Power Co*., 528 F.2d 437 (9th Cir. 1975)).

14

The Eighth Circuit once again affirmed the contemporary navigability in fact test in *Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts*, 921 F.2d 775 (8th Cir. 1990) (en banc). *Three Buoys* involved a boat collision resulting in death on the wholly intrastate Lake of the Ozarks in Missouri. *Id.* The plaintiffs filed various claims for wrongful death, personal injury, and property damage against a houseboat charterer. The houseboat charterer sought protection from full liability under the Limitation of Liability Act, 46 U.S.C. §§ 181 et seq. The court stated, "While there is ample case law describing navigability in contexts which do not concern admiralty, we are concerned with navigability only as it relates to admiralty. *Livingston* is the most complete statement from this court in that regard… The standard is one of contemporary navigability in fact." *Id.*

The undersigned is aware that both *Livingston* and *Three Buoys* involved torts. Thus, the parties have been careful to point out that contemporary navigability in fact test is the admiralty test for torts. However, the undersigned believes that the contemporary navigability location test for torts in the Eighth Circuit is consistent with Supreme Court precedent regarding the scope of the court's general admiralty jurisdiction, and can be applied to the crimes charged here.

**4. Binding Eighth Circuit Precedent Holds Table Rock Lake Is Not Navigable Under Admiralty Jurisdiction As a Matter of Law**

Table Rock Lake is not navigable as a matter of admiralty law under Eighth Circuit precedent. *Edwards v. Hurtel*, 717 F.2d 1204 (8th Cir. 1983) ("Edwards I"), reaffirmed after petition for rehearing, *Edwards v. Hurtel*, 724 F.2d 689, 689-90 (8th Cir. 1984) ("Edwards II"). This Court is governed by Eighth Circuit law.

In *Edwards*, two boats collided on Table Rock Lake. *Edwards I*, F.2d at 1205. The injured boater brought an action against the other boater invoking the court's admiralty jurisdiction over

civil claims under 28 U.S.C. § 1333. *Id*. This Court, (Clark, J., presiding), took judicial notice of the following facts as recited on appeal:

> The recreational nature of Table Rock Lake is generally known within the territorial jurisdiction of this Court. * * * [T]he lake has not been susceptible of use for commercial shipping and in fact has been used exclusively for recreational activities. * * * Furthermore, there is no reasonable likelihood that Table Rock Lake will become or be made navigable in the near future.

*Id*.

Using those judicially noticed facts and applying them to the contemporary navigability in fact standard adopted in *Livingston*, the court of appeals affirmed the trial court's determination of non-navigability. *Id*.

Although the undersigned finds that it must follow the precedent in *Edwards*, there are two issues in the *Edwards II* opinion worth addressing. First, the appellant did not challenge the propriety of the trial court taking judicial notice of the facts at the trial court, nor did he raise that as an issue on appeal. Given that unique procedural posture, the undersigned has carefully considered whether the Court must, or should, be bound by the finding of non-navigability in *Edwards*. The undersigned finds that the trial court in *Edwards* used the appropriate test and considered facts relevant to that test. Further, the test used in *Edwards* contemplated the "capability or susceptibility for use as an interstate highway of commerce" when one of the stipulated facts was that "there is no reasonable likelihood that Table Rock Lake will become or be made navigable in the near future." *Edwards*, 717 F.2d 1204. Thus, *Edwards* is binding for two reasons: first, *Edwards* contemplated susceptibility for use as an interstate highway of commerce—both presently and in the future; second, the Government has not put forth evidence or caselaw supporting that the Court can reopen the precedent as to navigability. Even if this were possible, the Court is not convinced that the nature and frequency of commercial shipping on Table Rock

Lake has substantially changed since *Edwards*. Having reviewed all of the evidence submitted by the parties, the undersigned remains convinced that even if it were to reopen the *Edwards* precedent, the result would be the same. Furthermore, in the related civil suit, the Court (Harpool, J., presiding) also received evidence and found that under the *Edwards* precedent and contemporary navigability in fact test that Table Rock Lake does not fall within the admiralty jurisdiction of the federal courts.

As to timing, the Government would have this Court believe that it should proceed to trial and present evidence regarding the navigability of Table Rock Lake to the jury. This position assumes that evidence as to navigability would in any way be relevant to the jury's findings. It is not. As established earlier, there is no element regarding navigability (or interstate commerce, for that matter) in either the statute, or in any jury instructions the undersigned has reviewed. Furthermore, the parties here agree where the incidents alleged occurred. Rather, the dispute is whether Table Rock Lake is navigable as a matter of law. That inquiry is best handled by the Court at this stage in the proceeding. To find otherwise could result in one jury finding Table Rock Lake navigable, and another jury finding it non-navigable. Furthermore, this Court should not force the Government or Defendants to proceed all the way through the case, only to decide this same issue after the presentation of evidence, but before submission to the jury. In answering this threshold issue, Table Rock Lake is not navigable as a matter of admiralty law. Accordingly, the charges under 18 U.S.C. § 1115 should be dismissed because the reach of the statute, which is coextensive with the Court's general admiralty jurisdiction, does not cover the conduct alleged.

17

**5. The Court Also Lacks Admiralty Jurisdiction Over 46 U.S.C. § 2302 (Negligent Operation)**

All three Defendants are charged under 46 U.S.C. § 2302 (Counts 35-47). That statute states, in pertinent part,

> "A person operating a vessel in a grossly negligent manner that endangers the life, limb, or property of a person commits a class A misdemeanor."

46 U.S.C. § 2302(b).

The reach of this statute is defined by the preceding section, 46 U.S.C. § 2301 which states,

> "Except as provided in section 2304 and 2306 of this title, this chapter **applies to a vessel operated on waters subject to the jurisdiction of the United States** (including the territorial sea of the United States as described in Presidential Proclamation No. 5928 of December 27, 1988) and, for a vessel owned in the United States, on the high seas."

46 U.S.C. § 2301 (emphasis added)

The Government argues that these two statutes (§ 2301 and § 2302), read in conjunction, invoke the admiralty subject matter jurisdiction of this Court because the statute only applies to a "vessel operated on waters subject to the jurisdiction of the United States…." *Id.* The Court agrees. Because the undersigned concludes that admiralty subject matter jurisdiction does not extend to Table Rock Lake, which is not navigable as a matter of law, the charges against Defendants under 46 U.S.C. § 2302 should also be dismissed for lack of admiralty subject matter jurisdiction.

**D. Commerce Clause Does Not Apply**

The Commerce Clause is not applicable here. First, the Commerce Clause does not confer subject matter jurisdiction to the Court. Second, the proper test for the prescriptive reach of § 1115 is the admiralty test for navigable waterways (contemporary navigability in fact), not the commerce clause test (historical navigability) for Congress's regulatory power.

18

The Commerce Clause goes to Congress's regulatory power, not to the subject matter jurisdiction of this Court. Article I section 8 states, in pertinent part, that Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art. I, § 8.[19] The jurisdiction of federal courts does not depend on regulations of commerce. *Propeller Genesee Chief v. Fitzhugh*, 12 How. 443, 13 L.Ed. 1058 (1852). "They are entirely distinct things, having no necessary connection with one another, and are conferred in the Constitution by separate and distinct grants." *Id.* "[T]he existence of regulatory power differs from the subject-matter jurisdiction of the courts." *Hugi v. United States*, 164 F.3d 378, 380-81 (7th Cir. 1999) (citation omitted). "[E]very circuit court to confront the question has rejected the historic navigability jurisdictional test when determining admiralty jurisdiction." *LeBlanc v. Cleveland*, 198 F.3d 353, 358 (2d Cir. 1999). This Court finds no reason to import a different test based on historical navigability under the Commerce Clause, since the prescriptive jurisdiction of § 1115 is co-extensive with the admiralty subject matter jurisdiction of the federal courts.

Second, the fact that 18 U.S.C. § 1115 involves a type of commerce does not mean Congress needed to use its commerce clause power to create or modify the statute—the entire field of admiralty is concerned with commerce. Congress's power to alter the national maritime law is independent of its power to regulate commerce. In *Ex Parte Garnett*, Justice Bradley held that congressional power to legislate in the field of admiralty was co-extensive with the field of admiralty itself, and did not depend on Congress's commerce power:

> It is unnecessary to invoke the power given to Congress to regulate commerce with foreign nations, and among the several states, in order to find authority to pass the law in question. The act of Congress which limits the liability of ship-owners was passed in

---

[19] That same section also states that Congress shall have the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." *Id.* It does not appear the Government seeks to invoke Congress's authority of the "high seas" over Table Rock Lake.

amendment of the maritime law of the country, and the power to make such amendments is co-extensive with that law. It is not confined to the boundaries or class of subjects which limit and characterize the power to regulate commerce; but, in maritime matters it extends to all matters and places to which the maritime law extends.

*Ex parte Garnett*, 141 U.S. 1, 12 (1891).

Decisions defining navigable waters under the Commerce Clause are not dispositive under admiralty jurisdiction. *Adams v. Montana Power Co*., 528 F.2d 437, 440 (9th Cir. 1975) (while the district court "found that the waterway was navigable 'in the sense that the federal government has jurisdiction over it under the commerce clause …,' this finding in no way weakens the conclusion that the waterway was non-navigable in a jurisdictional sense.").

In the absence of a legislated jurisdictional element directing the Court to utilize a Commerce Clause analysis for the prescriptive reach of § 1115, the Court should not deviate from the admiralty test and take the unprecedented move of expanding the reach of a criminal statute that will further encroach on the general police powers of the State of Missouri. Furthermore, the undersigned believes the commercial nature of the conduct in question is already contemplated by the scope of admiralty jurisdiction. In *Livingston*, in determining that Norfork Lake was not navigable for federal admiralty jurisdiction, the Eighth Circuit first looked at the overall purpose of admiralty jurisdiction. *Livingston v. United States*, 627 F.2d 165 (8th Cir. 1980). "Federal admiralty jurisdiction had its genesis in the felt need to provide a uniform body of law governing navigation and commercial maritime activity. Admiralty law, as a consequence, is concerned almost exclusively with the special needs of the shipping industry." *Id*. at 169 (citations omitted); *see also Sisson v. Ruby*, 497 U.S. 358, 362, (1990) (The primary purpose of federal admiralty jurisdiction is to protect commercial shipping with uniform rules of conduct.); *Adams v. Montana Power Co.*, 528 F.2d 437 (9th Cir. 1975) (No purpose is served by application of a uniform body

20

of federal law, on waters devoid of trade and commerce, to regulate the activities and resolve the disputes of pleasure boaters). Accordingly, the proper test for the prescriptive reach of 18 U.S.C. § 1115 is one of admiralty, not commerce clause regulation.

### E. Tragedy on Table Rock Lake

When the Stretch Duck 7 sank on Table Rock Lake just over two years ago, 17 men, women, and children lost their lives. It was, and remains, a terrible tragedy. Under our United States Constitution, federal courts have limited jurisdiction. General police powers over crimes rightfully belong to the states. Congress's ability to create or amend federal crimes rests on addressing criminal activity that implicates a federal interest. Although the number of federal crimes enacted by Congress has greatly risen in the last few decades, this Court should not usurp the State of Missouri's general police power unless Congress has explicitly directed application of federal law in that area. If Defendants are to be prosecuted for the tragedy on Table Rock Lake, the law requires that the prosecution be handled at the state level, and not in federal court.

### V. Conclusion

Therefore, for the reasons stated, it is hereby **RECOMMENDED** that Defendants' Joint Motion to Dismiss the Second Superseding Indictment for Lack of Admiralty Jurisdiction (Doc. 54) be **GRANTED**. Accordingly, it is further recommended that the other remaining pending motions (Docs. 52-53, 55-59) be **DENIED** as moot.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: September 4, 2020

21